UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § § § | |
| Plaintiff, | § § | 5:16-CR-00062 (DCR) (REW) |
| v. | § § | |
| **DERIC LOSTUTTER,** | § § § | |
| Defendant. | § § § § | |

### DEFENDANT'S FORMAL OBJECTIONS TO THE PSR

**TOR EKELAND, P.C.**
Tor Ekeland
Frederic B. Jennings
43 West 43rd Street, Suite 50
New York, NY 10036-7424
Tel: 718.737.7264
Fax: 718.504.5417
tor@torekeland.com
fred@torekeland.com

*Attorneys for Defendant Deric Lostutter*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

MR. LOSTUTTER'S ACTIONS DID NOT INVOLVE SOPHISTICATED MEANS..................2

    I.    The USSC Decided Not to Include Use of Proxy Servers in its Definition of "Sophisticated Means"........................................................................................................2

    II.   Using Proxy Servers is Common and Ordinary.................................................4

    III.  Neither changing a username and password nor filming and uploading a video constitute "sophisticated means" ......................................................................................6

CONCLUSION......................................................................................................................9

Defendant Deric Lostutter respectfully submits the following objections to the Pre-Sentence Report's ("PSR") United States Sentencing Guidelines ("Guidelines" or "USSG") calculation.

## INTRODUCTION

Paragraph 29 of the PSR adds a six-level increase to Mr. Lostutter's USSG calculation. Mr. Lostutter objects to the two-point sentencing enhancement based on the fact that he "intentionally engaged in or caused the conduct constituting sophisticated means." USSG § 2B1.1 of the Guidelines defines sophisticated means as *"especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense."* Under the Guidelines definition, Mr. Lostutter's conduct here did not involve "sophisticated means." Mr. Lostutter accessed Rollredroll.com by obtaining its password from Mr. McHugh, and then changed the password and administrator username. As stated below, the ability to change passwords and login information is well within the purview of the average internet user's skillset. Moreover, changing domain name server (DNS) settings to point to a different location fails to establish the use of "sophisticated means." There are many every day situations that cause average internet users to change their DNS settings, and simple step-by-step guides to execute this are also readily available after a basic internet search. This also is applicable towards the usage of a Virtual Private Network (VPN), which is an accepted and recommended security feature for all internet users. The PSR fails to establish any "especially complex or especially intricate offense conduct," but rather, shows that Mr. Lostutter's actions were in accordance with that of the average internet user.

**MR. LOSTUTTER'S ACTIONS DID NOT INVOLVE SOPHISTICATED MEANS**

The PSR enhances Keys' sentencing on the basis that he "intentionally engaged in or caused the conduct constituting sophisticated means" under U.S.S.G. § 2B.1.1(b)(10)(C). According to the Addendum to the PSR, the "sophisticated means" consisted of the creation of an account on the proxy service, "IPredator;" the public posting of Jim Parks' emails to his website; the changing of Jim Parks' website password and username; the logging onto the cPanel of the website and the upload of the video, written statement, and link to download Jim Parks' email; the changing of contact information inside the cPanel from Mr. Parks' to Mr. McHugh's email address; the change of the website's DNS settings and redirecting the website to a different internet host; the creation of the defacement page that Mr. Lostutter gave Mr. McHugh to upload to the website.

I. **The USSC Decided Not to Include Use of Proxy Servers in its Definition of "Sophisticated Means"**

The determination that Mr. Lostutter's use of a proxy or VPN service during the commission of his offense exhibits a "sophisticated means" is inconsistent with the intent of the USSC. The USSC previously considered adding proxy servers to the definition of "sophisticated means," but declined to do so.

The USSC held public hearings on March 17 and 18, 2009, on proposed amendments to the Sentencing Guidelines. This included a proposal to include use of a proxy service in connection with the charged offenses.[1] This proposed language read: "[i]n a scheme involving

---

[1] United States Sentencing Commission, Public Hearing, March 17 and 18, 2009, available at http://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20090317/Transcript.pdf

computers, using any technology or software to conceal the identity or geographic location of the perpetrator ordinarily indicates sophisticated means."[2] Had that new language been adopted, the burden would have shifted away from the government simply due to the fact that the defendant used some kind of proxy service.

When considering this issue, the USSC heard numerous speakers, which included representatives from the Department of Justice, Identity Theft Resource Center, Federal Public and Community Defenders, and the Electronic Frontier Foundation.[3] After hearing arguments, including those of its proponents, the USSC decided against adding use of proxy server to the definition. Since this point, the definition of "sophisticated means" has been narrowed in its scope (see below), without this addition.

Testimony at the hearing illuminates why the USSC deciding against adding proxy servers to the "sophisticated means" definition. Most people that use proxy servers do so for legitimate and ethical reasons, often without knowing at all how they work. As Jennifer Coffin of the National Sentencing Resource Counsel testified at the hearing, penalizing the use of a proxy "will absolutely sweep in conduct that is not especially complex or especially intricate," adding that the DOJ "would have us believe that any technology or software to hide identity or location meets that test, and it is simply not true."[4] A representative from the Electronic Frontier Foundation added that "…people use all sorts of things that were [once] a substantial engineering effort to create like a car or like Microsoft Word." He added that while this technology may take

---

[2] United States Sentencing Commission, Proposed 2009 amendment to Application Note for Sophisticated Means Enhancement under Subsection (b)(9), January 27, 2009, available at http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20090127_RFP_Amendments.pdf
[3] *Id.*
[4] United States Sentencing Commission, Public Hearing, pg. 36

3

engineers many years to develop, "they're often used by teenagers…by everyone in our modern society."[5]

The PSR concludes, however, that the use of the proxy service requires an enhanced sentence. (PSR at Paragraph 22). This is precisely the conclusion that the USSC was asked to avoid because it would and "relieve the government of proving the purportedly aggravating fact in any given case and shift the burden to the defendant to prove that the enhancement should not be followed."[6] The conclusion ignores the fact that proxies are used for a wide variety of activity, much of which is not criminal, and generally do require any kind of technical sophistication.

## II. Using Proxy Servers is Common and Ordinary

There is no evidence that Mr. Lostutter employed any sophisticated means by using a VPN. A VPN or proxy server is commonplace tool that internet users install on their computers for privacy and security purposes, such as to avoid identity theft when using a public internet connection.[7] It is marketed directly to, and recommended for average consumers.[8]

A "proxy server" is a mechanism by which one computer communicates with another, the "proxy" and that proxy computer acts on behalf of the original user and sends the results to the user. It creates another layer of identification protection for the original user. Additionally, this

---

[5] United States Sentencing Commission, Public Hearing, pg. 54.
[6] *Id.* at 37.
[7] *See, e.g,* Lee Mathews, *What A VPN Is, And Why You Should Use It To Protect Your Privacy,* Forbes.com, (Jan. 27, 2017), https://www.forbes.com/sites/leemathews/2017/01/27/what-is-a-vpn-and-why-should-you-use-one/#123933f74b8f.
[8] A quick online search of "VPN" will yield results marketing VPN services directly to consumers. *See, e.g.* VPN Unlimited, https://www.vpnunlimitedapp.com/en; *DotVPN-a better way to VPN,* https://chrome.google.com/webstore/detail/dotvpn-%E2%80%94-a-better-way-to/kpiecbcckbofpmkkkdibbllpinceiihk?hl=en; Norton WiFi Privacy, *A VPN from the Cybersecurity Leader*, http://buystatic.norton.com/norton/ps/bb/wifi/tabs_nwp_us_en_nbnf.html?om_sem_cid=hho_sem_sy:us:ggl:en:e|kw 0000438019|173818827522|c&country=US&gclid=CKrNx4u1tNICFcaIswod3mIJPA&start=0.

layer of identity protection is not the only reason that these services are used. Many companies also use VPNs for security and convenience, such as allowing employees remote access to the company's servers when they travel.

A proxy's technology is no more sophisticated than what many people use on a routine basis. Its core function is fundamentally similar to a home network router or a telephone call forwarding service – it forwards communications from one computer to another, through an intermediary service.

The mere fact that the underlying technology may be complex does not, on its own, constitute sophisticated means. Smartphones, for example, provide far more sophisticated and complex functions than a proxy service, but are commonplace and ubiquitous in our society. The technology that we use on a regular basis is becoming more sophisticated and refined on a daily basis, yet simultaneously more accessible and user friendly. Features enabled these devices perform security functions, such as preventing invasions of privacy and identity theft from unknown third parties. To argue that these technologies justify a "sophisticated means" enhancement would mean everyday usage of commonplace technology could enhance a criminal sentence. This is something that the "sophisticated means" enhancement could not have been intended to do. The USSC purposefully kept this definition narrow to avoid capturing a broad swath of everyday uses of sophisticated technology.

### III.     Neither changing a username and password nor filming and uploading a video constitute "sophisticated means"

Neither changing Jim Parks' password and username, filming and uploading the video onto Jim Parks' website, nor posting content onto that website involved sophisticated means with regard to Deric's conduct. They are all commonplace actions, simple to perform, which average internet users undertake without any sophisticated knowledge, skill, or means.

The average person has 19 different passwords,[9] and only uses 4 or 5 passwords per day.[10] One survey found that about 56% of respondents changed their passwords only once every six months.[11] Changing a password does not require sophisticated skills, and no sophisticated means or methods were used here. Rather, this is something that average internet users must do, and are often required to do by the websites they use, to maintain their online privacy and security – the methods for doing so are simple and user-friendly by design.[12] There is nothing sophisticated or complex about changing a password, even though the underlying password management system is a complex technology.

The case law in this circuit also suggests that it would be inappropriate to consider Mr. Lostutter's conduct as demonstrating a sophisticated means. Cases on this issue have found sophisticated means enhancement appropriate only when a specific act or series of acts in fact required a degree of complex planning.

---

[9] *See Average person has 19 passwords – but 1 in 3 don't make them strong enough,* Sophos Ltd. (Oct. 17, 2014), https://nakedsecurity.sophos.com/2014/10/17/average-person-has-19-passwords-but-1-in-3-dont-make-them-strong-enough/.
[10] *Consumer Survey: Password Habits, a study of password habits among American consumers, (Sept. 2012),* CSID, http://www.csid.com/wp-content/uploads/2012/09/CS_PasswordSurvey_FullReport_FINAL.pdf at 5.
[11] http://www.csid.com/wp-content/uploads/2012/09/CS_PasswordSurvey_FullReport_FINAL.pdf at 6.
[12] "Mandated password changes are a long-standing security practice designed to periodically lock out unauthorized users who have learned users' passwords." *See* Lorrie Cranor, *Time to rethink mandatory password changes*, Federal Trade Commission (Mar. 2, 2016), https://www.ftc.gov/news-events/blogs/techftc/2016/03/time-rethink-mandatory-password-changes.

In *United States v. Pierce*, 17 F.3d 146, 147 (6th Cir. 1994), the Sixth Circuit reviewed a determination that the appellant used sophisticated means to execute a tax evasion scheme. Because of the complex and multilayered deception involved, the Court held that the district court did not err in applying the enhancement to the appellant's sentence. The Court held:

> "This was not a case of an individual who simply lied on a 1040 form. Pierce went to his employer with false information, including presenting an inapplicable IRS publication dealing with nonresident aliens in order to exempt himself from withholding; he used several mailing addresses from different IRS regional service centers to impede the IRS' discovery of him; he changed his excessive number of withholding deductions in accordance with changes in IRS regulations so as not to alert the IRS; and he directed his wife to file misleading returns."

*U.S. v. Pierce*, 17 F.3d at 151.

In *United States v. Masters*, 216 F. App'x 524, 525 (6th Cir. 2007), the Sixth Circuit again affirmed a district court's sophisticated means sentence enhancement, but only after finding a complex scheme requiring sophisticated false access devices. The Court determined that the appellant, convicted for credit card fraud, used sophisticated means in committing his offense. There, the defendant used information from reference materials to attain the victim's birth certificate and credit report, then used that information to obtain multiple credit cards under false names. *Id.* The defendant in *Masters* also used the victim's birth certificate to obtain a driver's license, and defrauded the Social Security Administration by eliciting over $46,000 in benefits, which were directed to a bank account that was set up under a false name. *Id.* The Court held that while each element of the appellant's conduct was not particularly sophisticated, the intricacy of the steps involved in the fraudulent scheme constituted sophisticated means. *Id.* In the present case, there was no over-arching sophisticated scheme – a password was changed, a

7

video was made, and edits were made to another person's website. No act required technical skill or understanding of complex systems as in *Pierce* or *Masters*.

In *United States v. Erwin*, 67 F. App'x 876, 881 (6th Cir. 2003), the Sixth Circuit affirmed the district court's decision to apply the sophisticated means sentencing enhancement in a case in which the appellant pled guilty to mail and wire fraud. In *Erwin*, the Court held that the enhancement was proper, for the appellant's scheme was so sophisticated that he deceived his clients for several years, one being his own accountant. *Id.* at 881. In this case, the appellant was a branch manager who had access to his clients' brokerage accounts and authority to manage them. *Id.* at 878. The appellant constantly monitored the victim's account statements and performed sophisticated calculations to render the falsified accounts to his clients and customers. *Id.* at 881.These calculations involved hypothetical balances that would have reflected the victims' accounts had the fraud not occurred, which entailed calculating interest and dividends for funds that were no longer existence. *Id.* The appellant also falsified income tax forms, including 1099s. *Id.*

Unlike Mr. Lostutter, the above-mentioned defendants all engaged in intricate conduct that properly was classified as sophisticated means. They developed elaborate plans that necessitated skills not present in the vast majority of the general public, or formed schemes with many different, complex, and interdependent parts. Mr. Lostutter's conduct is vastly simpler. His actions could be duplicated by almost any average internet user. His use of a VPN, for example, is commonplace among businesses and individuals that value privacy and security. His conduct, which included changing a password, username, and uploading a video, included actions commonplace on a wide variety of websites. His actions drawn out over a period of years nor did

they involve any multi-stage plan. Deric and Mr. McHugh's actions were complete within the course of a few days, and involved relatively few and simple parts.

It would run counter to 6th Circuit law and the intent of the Guidelines to find a sophisticated means enhancement where the defendant's conduct involved nothing more sophisticated than the day-to-day actions of an average internet user. *See U.S. v. Pierce*, 17 F.3d 146, 151 (6th Cir. 1994) (finding, in a tax evasion context, that "sophisticated means" means more than simply "l[ying] on a 1040 form").

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court decline to apply the sophisticated means enhancement.

Respectfully submitted,

Dated: March 1, 2017
       New York, New York

    /s/Frederic B. Jennings
Frederic B. Jennings
Tor Ekeland, P.C.
43 West 43rd Street
Suite 50
New York, NY 10036-7424
Tel: 718.737.7264
Fax: 718.504.5417
fred@torekeland.com

## CERTIFICATE OF SERVICE

I certify that in accordance with Local Rule 49.4, this document was filed through the Court's ECF system under seal and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing.

DATED:   March 1, 2017
         New York, New York

_/s/Frederic B. Jennings_____
Frederic B. Jennings
Tor Ekeland, P.C.
43 West 43rd Street
Suite 50
New York, NY 10036-7424
Tel:  718.737.7264
Fax: 718.504.5417
fred@torekeland.com